IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| Rabbi Yitzhak Joel Miller ) | CASE NO 22-50065 |
| ) | |
| ) | |
| Debtor(s). ) | |
| ) | |

## MOTION FOR INTERIM AND FINAL ORDERS GRANTING AUTHORITY TO USE CASH COLLATERAL

NOW COMES Rabbi Yitzhak Joel Miller (the "Debtor") and moves the Court pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure as follows:

1. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code on February 14, 2022 and continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtor is an individual that owns several parcels of real property that are used for vacation rentals year around (the "Properties"). The Properties are located at:

   a. 1234 & 1236 Carondelet Street, New Orleans, Louisiana 70130 ("New Orleans Property");

   b. 23252 Sudie Payne Road, Rodanthe, North Carolina, 27968 ("Rodanthe Property"); and

   c. 442 Aldridge Road, Banner Elk, North Carolina 28604 ("Banner Elk Property").

4. The New Orleans Property has a lien held by Specialized Loan Servicing, LLC and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

5. The Rodanthe Property has a lien held by either SN Servicing Corporation or Selene Servicing, LP (the lien may have recently transferred) and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

6. The Banner Elk Property has a lien held by SN Servicing Corporation or Selene Servicing, LP (the lien may have recently transferred) and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

7. The liens held by the creditors assert a secured interest in the Properties the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code.

8. With respect to the secured claim held by Specialized Loan Servicing LLC against the New Orleans Property:

   a. The amount outstanding as of the Petition Date is approximately $636,153.99
   b. The Debtor believes the property to be worth approximately $925,000.00

9. With respect to the secured claim held by Selene Servicing, LP against the Rodanthe Property:

   a. The amount outstanding as of the Petition Date is approximately $549,732.78.
   b. The Debtor believes the property to be worth approximately $1,250,000.00.

10. With respect to the secured claim held by Selene Servicing, LP against the Banner Elk Property:

    a. The amount outstanding as of the Petition Date is approximately $530,196.34.
    b. The Debtor believes the property to be worth approximately $1,499,000.00.

11. The claims held by the SN Servicing or Selene Servicing, LP and Specialized Loan Servicing, LLC (collectively, the "Secured Parties") have not been scheduled as disputed, unliquidated, or contingent, and the Debtor believes that the liens and security interest described above are valid, property perfected and not subject to avoidance. The Debtor reserves for itself, any official committee of unsecured creditors subsequently created (the "Committee"), and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

12. The Rents for the Properties are initially received by Plus Rental Management, the rental occupancy management company ("Plus"). Plus withdraws their

fees and transfers those funds to Flagship Properties, LLC ("Flagship"), the Debtor's wholly owned maintenance and facility management company. The Debtor withdraws funds from Flagship as needed. The Debtor believes the rents are "cash collateral" once Plus receives the revenue of the Debtor.

13. The Debtor is dependent upon the use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all its tangible assets, and thus has a need for the use of Cash Collateral. If not permitted to use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To the end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

14. An order substantially in the form attached hereto as Exhibit A (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of the secured parties as (i) the secured parties would continue to maintain existing liens on all existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of the secured parties and all other creditors.

15. The Debtor offers to provide the secured parties with adequate protection for the use of its Cash Collateral by:

> a. Limiting the use of Cash Collateral as generally projected in the proposed budget attached hereto (the "Budget") and as set forth in the proposed Interim Order, or as may otherwise be approved by the Court after further notice and hearing.
>
> b. Providing to the secured parties, the Bankruptcy Administrator, and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) actual reports on a monthly basis by the 21st day of the following month, with the first such report

due March 21, 2022, and (iii) such other financial reports as may be reasonably requested from the Debtor by such parties.

16. The Debtor seeks authority to use Cash Collateral through and including (i) the effective date of a confirmed plan of reorganization, (ii) a sale of substantially all of the assets of the estate, or (iii) the conversion of the case to Chapter 7, whichever may first occur; provided, however, without further notice and hearing the Debtor may not use Cash Collateral for any purpose other than (i) operations in the ordinary course of business, (ii) monthly payments on executory contracts or leases, or (iii) payment of allowed administrative fees, costs, or expenses.

17. The Debtor proposes that in the event the secured parties has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said creditor, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said creditor may upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee (or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules), and (iv) the Bankruptcy Administrator and opportunity to cure, on an expedited basis:

    a. Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Motion; or

    b. Seek an order terminating further authority to use Cash Collateral altogether.

18. While the Debtor seeks the consent of the secured parties to the use of Cash Collateral on an interim basis and for the purposes set forth in this Motion, in the absence of such consent the Debtor asks the Court to authorize such use and to provide adequate protection to such creditor to the extent the use of Cash Collateral impairs such creditor's interest, in a manner and to the extent to be determined by the Court at the hearing on this Motion.

WHEREFORE, the Debtor prays the Court for the following relief:

1. Enter an Interim Order in the form attached hereto as <u>Exhibit A</u>, after notice and hearing (i) authorizing the Debtor to use Cash Collateral in an amount to be determined

at the interim hearing based upon the Budget attached hereto, and (ii) providing the secured parties with adequate protection as set forth herein.

2. Schedule a further hearing to be held regarding this motion, the Interim Order, and the Debtor's request for a final order, after providing such notice as is required by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. Such other relief as the Court may deem necessary and proper.

This the 18th day of February, 2022.

>*/s/ Erik M. Harvey*
>Erik M. Harvey, NCSB #37663
>Attorney for Debtor
>BENNETT GUTHRIE PLLC
>1560 Westbrook Plaza Dr.
>Winston-Salem, NC  27103
>Telephone:  (336) 765-3121

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| Rabbi Yitzhak Joel Miller | ) | CASE NO 22-50065 |
| | ) | |
| | ) | |
| Debtor(s). | ) | |
| _____ | ) | |

**INTERIM ORDER GRANTING AUTHORITY TO USE CASH COLLATERAL**

This matter came before the Court after due notice for hearing on _____ to consider the Motion for Interim and Final Orders Granting Authority to Use Cash Collateral (Doc. ___, the "Motion") filed by Rabbi Yitzhak Joel Miller (the "Debtor") pursuant to §363 of the Bankruptcy Code and Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure. The Debtor has complied with all applicable service requirements, and the Motion is properly before the Court for hearing.

After due consideration of the matters set forth in the Motion, the evidence presented, the record in this case, and the comments of parties wishing to be heard, it appears to the Court that use of cash collateral subject to the terms and conditions set

forth below is reasonable and appropriate, in the best interests of the bankruptcy estate and all creditors, and should be approved on an interim basis, and for good and sufficient reasons appearing the Court makes the following findings, conclusions and orders:

1. The Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code and continues in possession of its assets as debtor-in-possession.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334, and this matter is a core proceeding under 28 U.S.C. §157(b)(2). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The Debtor is an individual that owns several parcels of real property that are used for vacation rentals year around (the "Properties"). The Properties are located at:

   a. 1234 & 1236 Carondelet Street, New Orleans, Louisiana 70130 ("New Orleans Property");

   b. 23252 Sudie Payne Road, Rodanthe, North Carolina, 27968 ("Rodanthe Property"); and

   c. 442 Aldridge Road, Banner Elk, North Carolina 28604 ("Banner Elk Property").

4. The New Orleans Property has a lien held by Specialized Loan Servicing, LLC and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

5. The Rodanthe Property has a lien held by Selene Servicing, LP and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes

Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

6. The Banner Elk Property has a lien held by Selene Servicing, LP and the Deed of Trust has an "Assignment of Rents" clause included stating "Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender of Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default … and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent."

7. The liens held by the creditors assert a secured interest in the Properties the proceeds of which would constitute "Cash Collateral" as that term is defined in the Bankruptcy Code.

8. With respect to the secured claim held by Specialized Loan Servicing LLC against the New Orleans Property:

    a. The amount outstanding as of the Petition Date is approximately $636,153.99

    b. The Debtor believes the property to be worth approximately $630,000.00

9. With respect to the secured claim held by Selene Servicing, LP against the Rodanthe Property:

    a. The amount outstanding as of the Petition Date is approximately $549,732.78.

    b. The Debtor believes the property to be worth approximately $799,000.00.

10. With respect to the secured claim held by Selene Servicing, LP against the Banner Elk Property:

    a. The amount outstanding as of the Petition Date is approximately $530,196.34.

    b. The Debtor believes the property to be worth approximately $1,499,000.00.

11. The claims held by the Selene Servicing, LP and Specialized Loan Servicing, LLC (collectively, the "Secured Parties") have not been scheduled as disputed, unliquidated, or contingent, and the Debtor believes that the liens and security interest described above are valid, property perfected and not subject to avoidance. The Debtor reserves for itself, any official committee of unsecured creditors subsequently created (the "Committee"), and any trustee subsequently appointed in this Chapter 11 proceeding or in any subsequent Chapter 7 proceeding, any and all rights to challenge, avoid, object to, set aside or subordinate any claims, liens, security interests or rights of setoff against the Debtor's property, or the proceeds, profits and income generated therefrom.

12. The Debtor is dependent upon the use of the Cash Collateral to pay on-going costs of operating the business and insuring, preserving, repairing and protecting all its tangible assets, and thus has a need for the use of Cash Collateral. If not permitted to use the Cash Collateral to pay these expenses, reorganization would be rendered impossible, the going concern value of the business will be lost, and the fair market value of the estate's assets will be significantly reduced, resulting in financial loss to all parties in interest. To the end, the Debtor requests the Court to authorize the use of Cash Collateral as set forth herein.

13. An order (the "Interim Order") granting interim relief, followed by a final hearing at some future date selected by the Court, would not prejudice the rights of the Secured Parties as (i) the Secured Parties would continue to maintain existing liens on all existing collateral and on replacement collateral as set forth below, and (ii) the use of Cash Collateral would preserve the value of the estate for the benefit of the Secured Parties and all other creditors.

Based upon the foregoing, the Court concludes that interim use of Cash Collateral is necessary to avoid immediate and irreparable and that an Order granting interim relief, followed by a further or final hearing upon due notice, would not prejudice the rights of the secured parties, and for good and sufficient reasons appearing it is hereby ORDERED as follows:

1. Subject to the terms and conditions contained in this Order, the Debtor may

use Cash Collateral in accordance with Section 363 on an interim basis and for the period through and including _____, in the amounts and for the purposes set forth in the interim budget for such period attached hereto (the "Budget").During the period this interim order is in effect, the Debtor is authorized to make expenditures for expenses as outlined in the Budget. The Debtor is authorized to make additional expenditures on any one particular expense line item, not to exceed ten percent (10%) of such line item, should the need arise. However, under no circumstances shall the Debtor expend greater than 10% of the overall Budget without written permission of the Secured Parties and the Bankruptcy Administrator. The Debtor is not authorized to make expenditures on any line item exceeding 10% of the budgeted amount without prior written approval from the Secured Parties and the Bankruptcy Administrator. Notwithstanding the foregoing, should the Secured Parties not respond within 24 hours to a request for approval to exceed 10% of the Budget on a line item or cumulative basis made by the Debtor pursuant to this paragraph, the written approval of such party shall not be required.

2.  As adequate protection for the Secured Parties' interest in the Cash Collateral, the Secured Creditors are granted a perfected replacement lien in all postpetition assets of the Debt of to the same extent and priority as existed prepetition to the extent of diminution in value of the Secured Parties' collateral occasioned by the Debtors' use of Cash Collateral.  The Secured Parties' interest in the Cash Collateral is further protected by:

a.  Limiting the use of Cash Collateral as generally projected in the Budget and as set forth in the Interim Order, or as may otherwise be approved by the Court after further notice and hearing.

b. Providing to the Secured Parties, the Bankruptcy Administrator, and any Committee subsequently appointed (i) evidence of adequate insurance in effect with respect to all insurable property of the estate, and (ii) budget to actual reports on a monthly basis by the 21st day of the following month, with the first such report due by March 21, 2022, and (iii) such other financial reports as may be reasonably requested from the Debtor by such parties.

c.  The Secured Parties also appear to be adequately protected by an apparent

equity cushion in the Collateral.

3. The Debtor is required to pay all applicable insurance premiums, taxes, and other governmental charges as they come due and make all tax deposits and file all applicable tax returns on a timely basis.

4. Notwithstanding any suspension or termination of the right to use Cash Collateral (a "Termination Date"), the Debtor shall be permitted to carve out from Cash Collateral or any replacement collateral and use an aggregate amount necessary to pay all Permitted Trailing Expenses. As used herein, the term "Permitted Trailing Expenses" shall mean, on the Termination Date, the costs of operating and preserving the estate, including allowed administrative fees, costs, or expenses, to the extent incurred post-petition and prior to such Termination Date but in the aggregate amount not to exceed one hundred ten percent (110%) of the aggregate amounts set forth in the Budget through such Termination Date.

5. In the event the Debtor fails to comply with the requirements set forth above, or if the Secured Parties or the Bankruptcy Administrator has any objection to any of the items paid or provided for as set forth in the monthly reports or other reports of operations filed or furnished to said parties, or objects to a proposed budget or to a specific manner in which Cash Collateral is being used, then said creditor may, upon five (5) business days' notice to (i) the Debtor, (ii) Debtor's counsel, (iii) counsel for the Committee, or if no committee has been appointed, the 20 largest unsecured creditors of the Debtor as reflected in the Debtor's Schedules, and (iv) the Bankruptcy Administrator, and after providing the Debtor with period of three (3) days to cure such alleged default, aon an expedited basis:

a. Seek an order of the Bankruptcy Court restraining such payments or usage as not being in conformity with this Order; or

b. Seek an Order terminating further authority to use Cash Collateral altogether.

6. The terms and conditions of this Order do not necessarily constitute adequate protection of the interests of the Secured Parties in its Cash Collateral. Nothing in this Order shall waive any rights of any creditor unless expressly provided for herein,

including but not limited to the right to assert any claim pursuant to Section 507(b) of the Bankruptcy Code with priority over all other expenses of administration in this case and any ensuing Chapter 7 case.

7. This Order shall remain in full force and effect until the earlier of (a) entry of an Order by the Court modifying the terms of this Order, (b) entry of an Order by the Court terminating the right to use Cash Collateral, (c) the effective date of any confirmed plan, (d) a sale of substantially all assets of the estate, (e) conversion to Chapter 7, and (f) dismissal of the case.

8. Nothing contained herein shall be deemed a waiver by the secured parties from seeking further or additional adequate protection of its collateral, asserting objections to the Debtor's further use of Cash Collateral, or pursuing any other rights or remedies available to it under law or equity.

9. If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any subsequent order of this Court or any other court, such stay, modification or vacation shall not affect the validity or enforceability of any lien or priority authorized or created hereby prior to the effective date of such modification, stay, vacation or final order to the extent that said lien or priority is valid, perfected, enforceable and otherwise non-avoidable as of the Petition Date. The validity and enforceability of all liens and priorities authorized or created in this Order shall survive the conversion of this case to a proceeding under Chapter 7 of the Bankruptcy Code or the dismissal of this proceeding.

10. The terms of this Order shall be binding upon any Committee (if formed), and upon any trustee subsequently appointed, including but not limited to a Chapter 7 trustee upon conversion of this case to a case under Chapter 7 of the Bankruptcy Code. Nothing contained herein shall prevent a creditor, the Bankruptcy Administrator, any official creditors' committee or other party in interest from contesting the validity, perfection and enforceability, or priority of a secured party's liens or the amounts owing to the Secured Parties, or from raising any defenses, offsets, deductions or counterclaims thereto. The Debtor does not hereby waive, and expressly reserves for itself and the bankruptcy estate (including the

Bankruptcy Administrator, any subsequently appointed Chapter 7 Trustee, other creditors, other parties in interest and any Committee in this proceeding) the right to raise any defenses, offsets, deductions or counterclaims to, or to challenge the amount, validity, perfection, enforceability or priority of the prepetition liens and amounts owed which are asserted by the Secured Parties and, derivatively, any replacement lien provided for hereunder. The Secured Parties do not hereby waive, and expressly reserves for itself, the right to raise any and all rights, remedies, and defenses under the applicable agreements, contracts, liens, and other agreements with the Debtor or any other person or entity. The Secured Parties further expressly reserves for themselves the right to raise any and all matters, claims and or/defenses, of any kind or nature relating to any matter whatsoever specifically including, without limitation, the right to challenge valuations of the collateral securing the repayment of the agreements and contracts provided by the Debtor and other liens in connection with the instant bankruptcy proceeding. Subject to the foregoing, the findings, conclusions, or orders set forth herein are made on an interim basis, shall not constitute a final decision on any legal or factual issue, and are without prejudice to the right of any party to raise, contest, or seek the same or a different outcome at any subsequent hearing.

11. A further hearing (which may be a final hearing) on the Motion will be held at _____ p.m. (Eastern) on _____, at which time the Court will further consider the Motion for Authority To Use Cash Collateral; <u>provided however</u>, that the Secured Parties shall file a proof of claim prior to any final hearing on the use of cash collateral.

12. Counsel for the Debtor shall serve a copy of this Order upon all parties in interest and shall file a certificate of such service with the Clerk.

END OF DOCUMENT

### Cash collateral Budget Feb 15-March 15

**Income**

| | | |
|---|---:|---|
| New Orleans | $ | 16,353.78 |
| Banner Elk | $ | 17,047.62 |
| Rodanthe | $ | 3,324.50 |
| | $ | 36,725.90 |

**Expenses**

Flagship, Corporate

| | | |
|---|---|---:|
| | Business Travel | $ 6,000.00 |
| | Yitz Salary | $ 8,233.00 |
| TOTAL | | $ 14,233.00 |

New Orleans

| | | |
|---|---|---:|
| | NOLA Mgmt | $ 3,270.76 |
| | NOLA Listing | $ 1,635.38 |
| | NOLA Cleaning/Maint | $ - |
| | Repairs | $ - |
| | Supplies | $ - |
| | Utilities | $ 1,100.00 |
| | Construction | $ - |
| TOTAL | | $ 1,100.00 |

Banner Elk

| | | |
|---|---|---:|
| | Banner Elk Mgmt | $ 3,409.52 |
| | Banner Elk Listing | $ 1,704.76 |
| | Banner Elk Cleaning/Maint | |
| | Repairs (yearly/12) | $ - |
| | Supplies (yearly/12) | $ - |
| | Utilities (yearly/12) | $ 700.00 |
| | Construction | $ - |
| TOTAL | | $ 5,814.29 |

Rodanthe

| | | |
|---|---|---:|
| | Rodanthe Mgmt | $ 664.90 |
| | Rodanthe Listing | $ 332.45 |
| | Cleaning/Maint (yearly/12) | $ - |
| | Repairs (yearly/12) | $ - |
| | Supplies (yearly/12) | $ - |
| | Utilities (yearly/12) | $ 800.00 |
| | Construction | $ 1,600.00 |
| TOTAL | | $ 3,397.35 |

| | | |
|---|---:|---|
| TOTAL EXPENSES | $ | 24,544.64 |
| **NET INCOME** | $ | 12,181.26 |

# **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing MOTION FOR INTERIM AND FINAL ORDERS GRANTING AUTHORITY TO USE CASH COLLATERAL has been served on all the creditors and interested parties in this case.

William P. Miller, Electronically
Bankruptcy Administrator

US Attorney's Office – MDNC
Nathan.Strup@us.doj.gov

US Attorney's Office – MDNC
Civil Division
Fax: (336) 333-5257

Barbara Morganstern
Morganstern & Associates
100 S. Elm St, Ste 320
Greensboro, NC 27401

Dare Co Clerk, Superior Ct, Justice Ctr
Attn: Special Proceedings, #20 SP 2
962 Marshall C. Collins Dr.
PO Box 1849
Manteo, NC 27954

Dare County Tax Office
954 Marshall C. Collins Dr
PO Box 1000
Manteo, NC 27954

DLJ Mortgage Capital, Inc.
c/o Selene Finance LP
9990 Richmond Ave., Suite 400 South
Houston, TX 77042-4546

Elon University
100 Campus Drive
PO Box 398
Attn: Bursar's Office
Elon, NC 27244

Fay Servicing, LLC
901 S. 2nd St., Ste 201
Springfield, IL 62704

Fay Servicing LLC
8001 Woodland Ctr. Blvd., Ste 100
Tampa, FL 33614

Fay Servicing, LLC
c/o Registered Agent Solutions, Inc. RA
176 Mine Lakes Ct., Ste. 100
Raleigh, NC 27615-6417

Fay Servicing, LLC
c/o Phillip A. Hedrick, Jr.
Bankruptcy Dept.
P.O. Box 2505
Fayetteville, NC 28302

Fed Loan Servicing
P.O. Box 60610
Harrisburg, PA 17106

First Point Collection Resources
P.O. Box 26140
Greensboro, NC 27402-6140

Flagship Vacation Properties
1818 Deerfield Rd
Boone, NC 28607

Guilford County Tax
P.O. Box 3138
Greensboro, NC 27402

High County Renovators, Inc.
655 Winklers Creek Rd.
Boone, NC 28607

High County Renovators, Inc.
c/o Nathan A. Miller, Esq
Miller & Johnson, PLLC
PO Box 49
Boone, NC 28607

Hutchens Law Firm, LLP
Attn: Phillip A. Hedrick Jr.
Bankruptcy Dept.
PO Box 2505
Fayetteville, NC 28302

Internal Revenue Service
Centralized Insolvency
PO Box 7346
Philadelphia, PA 19101-7346

Jefferson Capital Systems
P.O. Box 7999
Saint Cloud, MN 56302-9617

John Robichaux & John Robichaux, LLC
5520 McKenna St.
New Orleans, LA 70125

Joseph J. Vonnegut
P.O. Box 2505
4317 Ramsey St.
Fayetteville, NC 28311-2133

Kohl's
P.O. Box 414509
Irving, TX 75014

Kristen Redman
Robertson Anschutz Schneid Crane & Part.
525 N. Tryon St. , Suite 1600
Charlotte, NC 28202

Linda Danner, Registered Agent
Wynding Down, LLC
6000 Red Carriage Ln
Charlotte, NC 28212

Michael Stein
Hutchens Law Firm LLP
6230 Fairview Rd
PO Box 12497
Charlotte, NC 28220

Midland Credit Management
P/O. Box 2037
Warren, MI 48090

Midland Credit Management
P.O. Box 2037
Suite 100
Warren, MI 48090

NC Department of Revenue
PO Box 25000
Raleigh, NC 27640-0002

NC Employment Security Commission
PO Box 26504
Raleigh, NC 27611

Orleans Parish Sheriff's Office
Civil Div, Real Estate Sales #2019-8948
2800 Perdido St.
New Orleans, LA 70119

Pentagon Federal Credit Union
Box 1432
Alexandria, VA 22313

Pentagon Federal Credit Union
Attn: Officer
7490 Jones Branch Dr.
Mc Lean, VA 22102

Pentagon Federal Credit Union
Attn: Officer
2930 Eisenhower Ave.
Alexandria, VA 22314

Pentagon Federal Credit Union
P.O. Box 1432
Alexandria, VA 22313

Portfolio Recovery Associates, LLC
P.O. Box 41067
Norfolk, VA 23541

Selene Finance LP
c/o Corporation Service Company, Reg.Agt
2626 Glenwood Ave, Ste 550
Raleigh, NC 27608

Selene Finance LP
9990 Richmond Ave, Ste 400, South
PO Box 422039
Houston, TX 77242

Southern California Edison Company
2131 Wallnut Grove Ave
Rosemead, CA 91770

Specialized Loan Servicing
8742 Lucent Blvd. Suite 300
Littleton, CO 80129

Specialized Loan Servicing, LLC
c/o United Agent Group, Inc - Reg Agent
15720 Brixham Hill Ave, Ste 300
Charlotte, NC 28277

Specialized Loan Servicing, LLC
6200 Quebec St, Ste 300
Englewood, CO 80110

Synchrony Bank
P.O. Box 965013
Orlando, FL 32896

Synchrony Bank
P.O. Box 965015
Orlando, FL 32896

Synchrony Bank/Amazon
P.O. Box 965015
Orlando, FL 32896

The Law Office of Herschel C. Adcock Jr.
Attn: Corey J. Giroir
13541 Tiger Bend Rd
Baton Rouge, LA 70817

Truliant Federal Credit Union
Attn: Officer
PO Box 26000
Winston Salem, NC 27114-6000

U.S. Bank Trust National Assoc. Trustee
c/o Specialized Loan Servicing, LLC
6200 S. Quebec St.
Greenwood Village, CO 80111

U.S. BankTrust National Association
c/o Fay Servicng, LLC
P.O. Box 814609
Dallas, TX 75381-4609

Watauga County Tax Administration
Ste 21 Courthouse
842 W. King Street
Boone, NC 28607

Wells Fargo
P.O Box 14517
Des Moines, IA 50306

| | |
|---|---|
| Wells Fargo Bank N.A.<br>P.O Box 10438 MAC F8235-02F<br>Des Moines, IA 50306-0438 | Sprout Mortgage, LLC<br>Agent for Service: Universal Registered Agents, Inc.<br>1011 North Causeway Blvd.<br>Suite 3<br>Mandeville, LA 70471 |
| Wynding Down LLC<br>2037 Brae Trail<br>Birmingham, AL 35242 | |
| Office of the Sheriff (Civil Division, Real Estate Department)<br>403 Civil Courts Building<br>421 Loyola Avenue<br>New Orleans, LA 70112 | HOF I Trust, C/O Specialized Loan Servicing<br>Agent for Service: United Agent Group, Inc.<br>1070-B West Causeway Approach<br>Mandeville, LA 70471 |
| Recovco Mortgage Management, LLC<br>Agent for Service: CT Corporation System<br>3867 Plaza Tower Dr.<br>Baton Rouge, LA 70816 | Ronnie Berthelot<br>Adcock Law<br>13541 Tiger Bend Rd,<br>Baton Rouge, LA 70817 |
| Specialized Loan Servicing, LLC<br>Agent for Service: United Agent Group, Inc.<br>1070-B West Causeway Approach<br>Mandeville, LA 70471 | Eric J Simonson<br>Hinshaw & Culbertson<br>Attorney for Specialized and HOF Legal Trust<br>400 Poydras Street, Suite 3150<br>New Orleans, LC 70130 |
| SN Servicing<br>13702 Coursey Blvd, Bldg 1A<br>Baton Rouge, LA 70817-1370 | Christina M. Seanor<br>Bradley Arant Boult Cummings LLP<br>Attorney for Recovco Mortgage Management and Sprout Mortgage<br>One Jackson Place, Suite 1000<br>188 E. Capitol Street<br>Jackson, MS 39201 |

This the 18th day of February, 2022.

*/s/ Erik M. Harvey*
Erik M. Harvey, NCSB #37663
Attorney for Debtor
BENNETT GUTHRIE PLLC
1560 Westbrook Plaza Dr.
Winston-Salem, NC 27103
Telephone: (336) 765-3121